IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

APA DANA ORIENTAL RUG             )
GALLERY, INC.,                    )
                                  )
                    Plaintiff,    )
                                  )
vs.                               )          Case No. 06-1207-DWB
                                  )
HAMID RAISDANA,                   )
                                  )
                    Defendant.    )
_____  )

## MEMORANDUM & ORDER

This matter is before the Court on Defendant Hamid Raisdana's Motion to

Dismiss all claims asserted against him pursuant to Fed.R.Civ.P. 12 (b)(2).  (Doc.

25).  Plaintiff has responded and opposes the motion.  (Doc. 29).  Defendant has

filed a reply.  (Doc. 32.)  The motion is, therefore, fully briefed and ripe for

decision.[1]

Defendant contends that he lacks minimum contacts with the State of Kansas

and, therefore, is not subject to the jurisdiction of the Kansas Long Arm statute,

_____

[1]  In accordance with the provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the
parties have consented to allow a Magistrate Judge to conduct any and all proceedings in
this case, including the entry of a final judgment.  (*See* Doc. 10.)

K.S.A. 60-308, and that exercise of personal jurisdiction over him in this case would violate traditional notions of fair play and substantial justice.  For the reasons set forth below, the Court **GRANTS**  Defendant's Motion.

## I. <u>FACTUAL BACKGROUND</u>

Because of the similarity of names of the individuals who are the main actors in this case, and some degree of confusion as to how their names are spelled, it is important to identify these key individuals.

1.     Bahman RaisDana is the owner and president of the plaintiff corporation, Apa Dana Oriental Rug Gallery, Inc.  (Doc. 29, at 14 ¶ 1.) Throughout this opinion, he will be referred to as "Bahman" and the plaintiff corporation will be referred to as "Apa Dana."

2.     Defendant Hamid Raisdana is a resident of California and was at one time an officer and shareholder of Persian & Oriental Rug Center, Ltd., a California corporation who was a retailer of oriental rugs operating in the LA Mart in Los Angeles, California.  (Doc. 26-2, at 2, ¶¶ 1, 2, 7.)[2]  Throughout this opinion, he will be referred to as "Hamid" and the corporation will be referred to as the "Rug Center."

───────────────

[2]  The Court notes that defendant's name is spelled differently in the Petition than in his Affidavit and Supplemental Affidavit.  (*Cf.* Doc. 1, at 1 (Raisdana) *with* Doc. 26-2, at 1 and Doc. 32, at 26 (Risdana).)

2

3.     Mohammed RaisDana is identified as the individual who came to Wichita, Kansas in November 2000, and had contact with Bahman at the business offices of Apa Dana. (Doc. 29, at 3, 14 (¶ 3.))  This is apparently the same individual referred to in Defendant's memorandum as "Dariush" Mohamad R. Raisdana, who, in 2005, was the president and a stockholder in the Rug Center. (Doc. 26, at 3.)[3]  Throughout this opinion, this individual will therefore be referred to as "Mohamad."  Defendant's supporting memorandum states that Mohamad is the uncle of Bahman (Doc. 26, at 17, n. 1), and this is never disputed by Apa Dana.

4.     There are two other "entities" who apparently were retailers of rugs in California and whose names appear in documents in this case: Nima Rug Gallery and Santa Barbara Gallery and/or Santa Barbara Rug.  (Doc. 26-2, at 2, ¶¶ 5, 6.) Hamid states in his affidavit that he has never been an owner or shareholder in either of these entities.  *Id.*

With the players now identified, the Court will review the facts and allegations of the parties.

---

[3]  As will be noted later, this is also apparently the same individual who is identified as the "account holder" on invoices from Apa Dana where he is identified as "Mr. Dariush Raisdana."  (*See e.g.*, Doc. 26-3, at 12.)

### A.  Undisputed facts.

The Rug Center was a California corporation and retailer of oriental rugs operating in Los Angeles, California, in a facility commonly known as "LA Mart." (Doc. 26, at 2, ¶ 1; Doc. 29, at 1, ¶ 1.)  Hamid was formerly an officer and stockholder of the Rug Center.  (Doc. 26, at 2, ¶ 2; Doc. 29, at 1, ¶ 2.)  He is a resident of California and was last physically in Wichita more than ten years ago. (Doc. 26, at 6, ¶¶ 22, 23; Doc. 29, at 2, ¶ 22, 23.)  The parties agree that Hamid never personally picked up rugs or other items from Plaintiff.  (Doc. 26, at 7, ¶ 30; Doc. 29, at 3, ¶ 30.)

On or about July 19, 2004, Hamid sold all of his shares of stock in the Rug Center to Mohamad.  (Doc. 26, at 2-3, ¶¶ 4, 6; Doc. 29, at 1, ¶¶ 4, 6;  *see also* Doc. 26-2, at 14 (IRS for 2553 listing all shareholders of the Rug Center)).  Thereafter, Hamid was no longer a shareholder of the Rug Center.  (*Id*.)  As of March 24, 2005, Mohamad, not Defendant, was the registered agent and president of the Rug Center, as well as its only officer listed with the California Secretary of State. (Doc. 26, at 2, ¶ 5; Doc. 29, at 1, ¶ 5; Doc. 26-2, at 5.)  While he was an officer and shareholder of the Rug Center, Hamid was not actively involved in any way in the operation and business of the Rug Center.  (Doc. 26 at 2, ¶ 3; Doc. 29 at 1, ¶ 3.)  Also, Hamid is not and never has been an owner, officer or shareholder of Nima

4

Rug Gallery or Santa Barbara Rug.  (Doc. 26, at 6, ¶ 21; Doc. 29, at 2, ¶ 21.)

Plaintiff Apa Dana is "an importer, wholesaler and retailer of oriental rugs and furnishings," doing business in Wichita, Kansas.  (Doc. 1, at 4, ¶ 1.)  Bahman is both the owner and president of Plaintiff.  (Doc. 29, at 3, ¶ 34; Doc. 32, at 2, ¶ 34.)  Apa Dana initially filed its lawsuit against Defendant in Sedgwick County, Kansas, District Court on November 30, 2005.[4]  (Doc. 1, at 4-6; Doc. 26, at 3, ¶ 7; Doc. 29, at 1, ¶ 7.)  That action was voluntarily dismissed by Apa Dana after Hamid filed a Motion to Dismiss in state court.  (Doc. 26, at 3, ¶ 9; Doc. 29, at 2, ¶ 9.)  The action was re-filed by Apa Dana in Sedgwick County District Court on June 13, 2006, as Case No. 06 LM 9229.  (Doc. 26, at 3, ¶10; Doc. 29 at 2, ¶ 10.)  That case was removed to United States District Court for the District of Kansas on July 18, 2006.  (Doc. 1.)

Apa Dana claims that Hamid owes a total of $406,607.41, including various finance charges.[5]  (Doc. 26, at 4, ¶ 13.)  Apa Dana has produced invoices in response to written discovery supporting only $119,371.86 of the debt claimed in

---

[4]  On that date, the Rug Center was active and in good corporate standing.  (Doc. 26, at 3, ¶ 8.)  The Rug Center was not conditionally dissolved until December 21, 2005.  (*Id.*, Exh. B.)

[5]  This total consists of $190,680.09 allegedly owed by the Rug Center, $23,601.80 allegedly owed by Nima Rug Gallery, and $153,418.41 allegedly owed by Santa Barbara Rug.  (Doc. 1, at 7-10; Doc. 26, at 4, ¶ 13; Doc. 29 at 2, ¶ 13.)

this lawsuit. (Doc. 26, at 4, ¶ 15; Doc. 29 at 2, ¶ 15; *see also* Doc. 26-3, at 3-4.)

Most invoices and shipping documents indicate on their face that the rugs were

sold and shipped to the Rug Center as the purchaser and identify Mohamad ("Mr.

Dariush Raisdana") as the "Account Holder."  (Doc. 26, at 5, ¶ 16; Doc. 26-3, at

10-24.)  Two of the documents, however, indicate that rugs were "SOLD TO:

Hamid Raisdana/Dariush Raisdana, Persian & Oriental Rug Center" or

"Hamid/Dariush Raisdana, Persian & Oriental Rug Center."  (Doc. 26-3, at 17, 19.)

[6]  The parties agree that Hamid never signed a personal guaranty for any purchase

or order made by the Rug Center.[7]  (Doc. 26, at 5, ¶ 20; Doc. 29 at 2, ¶ 20.)

---

[6]  Interestingly, the "invoice" attached to the Petition filed in state court in this case
is addressed to "Mr. Hamid Raisdana, President, Oriental Rug."  (Doc. 1, at 7-10.)  It
appears that this is not really an invoice, but rather is a statement of account since it
specifically references invoices in the text and then proceeds to add finance charges for
period long after the last invoice was identified.  *Id.*  This "statement" does not bear a
date of issuance although it includes finance charges as late as June 2005, and it identifies
some of the rugs as "Nima Rug Gallery Account" or "Santa Barbara Rug Account." By
contrast, the actual invoices attached to Defendant's supporting memorandum (which
were produced by Apa Dana during written discovery in this case) show that most of the
invoices, with only two exceptions discussed above in the text, do not even contain
Hamid's name.

[7]  Likewise, Defendant never signed a personal guaranty for any purchase or order
made by Nima Rug Gallery or Santa Barbara Rug Gallery.  (Doc. 26, at 5-6, ¶ 20; Doc.
29, at 2, ¶ 20.)

### B.  Facts in dispute.

The parties have provided conflicting accounts concerning the manner in which the underlying purchase of the rugs occurred.  These disputed facts are summarized as follows.

In its opposition, Apa Dana alleges that in the fall of 2000, Mohamad, on behalf of Hamid, contacted Bahman with Apa Dana, "about selling Persian and Oriental rugs to Mohamad and defendant [Hamid] for their store in Los Angeles, California."  (Doc. 29, at 3, ¶ 35, and at 14, ¶ 3.)   Hamid counters that Apa Dana's sworn Interrogatory responses establish that Mohamad came to Kansas purchase rugs on behalf of the Rug Center, not on behalf of Hamid.  (Doc. 26, at 13.)  A review of Plaintiff's Supplemental Answer to Interrogatory No. 5 (Doc. 26-3, at 42-43) indicates that Mohamad was in Apa Dana's retail store in Wichita in November 2000

> to buy some rugs for Persian and Oriental Rug Center of
> Los Angeles that had no creditworthiness with plaintiff.
> Plaintiff needed to have personal guarantee of all
> purchasing for the company Mohammad RaisDana was
> representing before allowing the rugs to be removed from
> plaintiff's store.  Bahman RaisDana called defendant,
> who was known personally to Bahman RaisDana, as the
> major shareholder and president of the company, to
> guarantee personally all purchases from plaintiff.
> Defendant personally guaranteed payment as an
> inducement to plaintiff to deliver the rugs to defendant's
> businesses in California.  Mohammad was present when

> Bahman spoke with defendant.  Plaintiff even invoiced
> defendant as well as his company for payment, to which
> defendant never voiced any objection.

Apa Dana's recitation of the facts in its opposing memorandum and in the

Declaration of Bahman Raisdana are not wholly consistent with Apa Dana's prior

supplemental interrogatory answer.  Instead, the memorandum and declaration

state that during the November 2000 trip by Mohamad to Wichita, Mohamad

inspected Apa Dana's rugs, thereafter "entering into negotiations" with Bahman

"in an attempt to finalize the purchase of certain rugs."  (Doc. 29, at 3, ¶¶ 36, 37,

and at 14, ¶¶ 3, 5.)  Apa Dana then alleges that because Plaintiff had not conducted

business with Hamid "or any of his business associations," Bahman "called

[Hamid] on the telephone in the presence of [Mohamad] to confirm [Mohamad's]

authority to act on [Hamid's] behalf" and to seek "assurances that [Hamid] would

be personally liable for the payment of the rugs."  (Doc. 29, at 3-4, ¶¶ 38, 39; *see*

*also*, Doc. 26-3, at 31.)  Apa Dana then alleges that Hamid gave Bahman verbal

assurance that Hamid  "would guarantee payment for the rugs."  (Doc. 29, at 4, ¶

40; *see also*, Doc. 26-3, at 31.)  Thereafter, Bahman, on behalf of Apa Dana,

"completed negotiations with [Mohamad] for purchase of rugs to be shipped to

[Hamid's] place of business."  (*Id.*)

Hamid's supplemental affidavit specifically denies that Hamid ever gave

8

Mohamad authority to act <u>as Hamid's agent</u> or to fly to Wichita to act <u>on his behalf</u> concerning purchase of rugs and states that Hamid never informed Apa Dana or any of its representatives that Mohamad had the authority to purchase rugs on behalf of <u>Hamid</u>.  (Doc. 32, at 26 ¶¶ 2, 4, 6 & 8.)[8]  Furthermore, Hamid directly controverts Apa Dana and Bahman's statements that Hamid was called by Bahman about guaranteeing payment for the rugs, and denies giving Apa Dana or any representative of Apa Dana his personal guaranty of payment for the rugs.  (Doc. 32, at 27, ¶¶ 9, 10.)

Finally, Apa Dana alleges that approximately six months after this agreement was finalized and the rugs were shipped to California, Hamid and Mohamad ceased making monthly payments to Apa Dana, after having made four or five payments.  (Doc. 29, at 4, ¶ 42; *see also* Doc. 26-3, at 32, 43.)  Bahman

---

[8]  In his supplemental affidavit, Hamid <u>denies that he</u> <u>instructed</u> Mohamad to contact Apa Dana about purchase of rugs for the Rug Center and that <u>he</u> <u>never instructed</u> Mohamad to fly to Wichita on behalf of the Rug Center.  (Doc. 32, at 26 ¶¶ 3, 5.)  He does not, however, actually deny that Mohamad was, in fact, acting as agent for the Rug Center when he came to Wichita and met with Apa Dana in 2000.  On the contrary, while Hamid admits that in 2000 he was both a stockholder and officer of the Rug Center, he claims that he was not actively involved in the operation and business of the Rug Center. (Doc. 26-2, at 2, ¶¶ 2-3.)  Therefore, while Hamid may not have instructed Mohamad to come to Wichita on behalf of the Rug Center, he is not in a position to question whether Mohamad in fact did represent the Rug Center in trying to purchase rugs from Apa Dana. In fact, the paperwork generated by Apa Dana clearly supports the conclusion that Apa Dana was selling its rugs to the Rug Center, was shipping those rugs to the Rug Center, and considered Mohamad to be the account holder.  (*See e.g.*, Doc. 26-2, at 24-28.)

9

alleges he subsequently met with Hamid in October 2003, in California, during which Hamid "promised to pay the money with interest by or before May 2004." (Doc. 26-3, at 33-34, 44.)  Allegedly, however, Defendant "failed and refused to pay the balance due plaintiff after demand."  (Doc. 1, at 5, ¶ 9.)  Again, at least some of these allegations are directly controverted by Hamid's supplemental affidavit.  There he testifies that he "never made any personal payments to plaintiff [Apa Dana] for the purchase of any rugs."  (Doc. 32, at 27, ¶ 11.)   In the reply memorandum, Hamid also notes that Apa Dana's own opposition memorandum concedes that the checks it received were drawn on a "corporate account" and not on any personal account of Hamid's.   (Doc. 32, at 14 (*citing* Doc. 29, at 12.))

With this factual background, the Court turns to the legal question presented.


## II.  LEGAL STANDARDS

### A.    Standard for ruling on Rule 12(b)(2) motions.

Defendant requests a dismissal of Plaintiff's claims based on an alleged lack of personal jurisdiction.  "The standard that governs a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction is well established:  'The plaintiff bears the burden of establishing personal jurisdiction over the defendant.'"  ***Hudye Soil Services, Inc. v. Tyler***, 46 F. Supp.2d 1157, 1161 (D.Kan. 1999) (quoting ***Behagen***

*v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir.1984), *cert. denied*, 471

U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985) (citations omitted)).  *See also*,

***Dudnikov v. Chalk & Vermillion Fine Arts, Inc.,*** 514 F. 3d 1063, 1069 (10th Cir.

2008).

      As the Tenth Circuit recently noted in ***Dudnikov,*** the extent of the plaintiff's

burden depends in part on the way the trial court handles the motion to dismiss for

lack of personal jurisdiction.  The trial court can proceed in several ways including

(1) reference to only the complaint and affidavits, (2) a pre-trial evidentiary

hearing, or (3) sometimes at trial itself.  514 F.3d at 1069.  When the trial court

decides the jurisdictional issue as the result of an evidentiary hearing or at trial, the

plaintiff must generally establish that personal jurisdiction exists by a

preponderance of the evidence.  ***Dudnikov,*** 514 F.3d at 1070 n. 4 (*citing **Dennis***

***Garber & Assoc., Inc. v. Pack-Tech Int'l Corp***., 115 F.3d 767, 773 (10th Cir.

1997)).

      When the jurisdictional decision is based solely on the complaint and

affidavits, however, the court is to take as true all well-pled (that is plausible, non-

conclusory, and non-speculative) facts alleged in the complaint.  ***Dudnikov,*** 514

F.3d at 1070 (*citing **Bell Atl. Corp. v. Twombly***, __U.S. __, 127 S.Ct. 1955, 1964-

65, 167 L.Ed.2d 929 (2007)).   However, any factual disputes in the parties'

affidavits must be resolved in the plaintiff's favor. ***Dudnikov,*** 514 F.3d at 1070

(*citing **FDIC v. Oaklawn Apartments***, 959 F.2d 170, 174 (10ᵗʰ Cir. 1992)).

Likewise, when the motion is decided at a preliminary stage by reference to only

the complaint and affidavits, the plaintiff need only make a *prima facie* showing of

personal jurisdiction. ***Dudnikov,*** 514 F.3d at 1070 (*citing **Wenz v. Memery***

***Crystal***, 55 F.3d 1503, 1505 (10ᵗʰ Cir. 1995)).

In the present case, both parties have supported their arguments with

affidavits. Other exhibits, such as discovery responses, have also been used.

> [W]hen a motion to dismiss for lack of jurisdiction is
> decided on the basis of affidavits and other written
> materials, the plaintiff need only make a prima facie
> showing. The allegations in the complaint must be taken
> as true to the extent that they are uncontroverted by the
> defendant's affidavits. If the parties present conflicting
> affidavits, **all factual disputes are resolved in the
> plaintiff's favor, and the plaintiff's prima facie
> showing is sufficient notwithstanding the contrary
> presentation by the moving party**.

*Id*. (emphasis added). *See also, **TH Agric. & Nutrition, LLC & Ace European***

***Group Ltd***., 488 F.3d 1282, 1286 (10ᵗʰ Cir. 2007); ***Jefferson County Sch. Dist. No.***

***R-1 v. Moody's Investor's Servs.***, 175 F.3d 848, 855 (10 Cir.1999); ***Dudnikov,***

514 F.3d at 1070.[9]

---

[9] For purposes of ruling on the present motion, the Court will treat any sworn
responses to written discovery the same as if those responses were made by affidavit.

**B.     The Kansas Long-Arm Statute and Minimum Contacts**.

Although Defendant is not a resident of the state of Kansas, it is well-

established that

> [t]he law of Kansas is used to determine whether the
> court has personal jurisdiction over a nonresident
> defendant as it represents 'the law of the forum state.'
> ***Yarbrough v. Elmer Bunker & Assocs.***, 669 F.2d 614,
> 616 (10th Cir.1982). In order to exercise personal
> jurisdiction over a nonresident defendant, a court must
> apply a two-part test to ensure that the 'exercise of
> jurisdiction is sanctioned by the long-arm statute of the
> forum state' and that due process requirements of the
> Constitution are satisfied. ***Federated Rural Elec. Ins.
> Corp. v. Kootenai Elec. Coop.***, 17 F.3d 1302, 1304 (10th
> Cir.1994) (*citing* Fed.R.Civ.P. 4(e)).

***Brooke Credit Corp. v. Texas American Insurers, Inc.***, 2007 WL 1586082, *3

(May 31, 2007 D. Kan.).

The first test is whether jurisdiction is sanctioned by the Kansas long-arm

statute, which provides in relevant part:

> Any person, whether or not a citizen or resident of this
> state, who in person or through an agent or
> instrumentality does any of the acts hereinafter
> enumerated, thereby submits the person and, if an
> individual, the individual's personal representative, to the
> jurisdiction of the courts of this state as to any cause of
> action arising from the doing of any of these acts:  (1)
> Transaction of any business within this state; . . . (5)
> entering into an express or implied contract, by mail or
> otherwise, with a resident of this state to be performed in
> whole or in part by either party in this state . . .

13

K.S.A. 60-308(b).  Often, however, "[b]ecause the Kansas long-arm statute is

construed liberally so as to allow jurisdiction to the full extent permitted by due

process, [the Court's analysis will] proceed directly to the constitutional issue."

*OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir.

1998) (quotation omitted).  *See also* ***TH Agric. & Nutr., LLC***, 488 F.3d at 1287;

***Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Co-op***., 17 F.3d 1302, 1305

(1994) (*citing* ***Volt Delta Resources, Inc. v. Devine***, 241 Kan. 775, 740 P.2d 1089,

1092 (1987)).

The Court's constitutional due process inquiry is "whether the defendant

purposely established 'minimum contacts' in the forum state." ***Burger King Corp.***

***v. Rudzewicz***, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

"Minimum contacts" is considered the "touchstone" for an analysis of personal

jurisdiction.  ***International Shoe Co. v. Washington***, 326 U.S. 310, 316, 66 S.Ct.

154, 158, 90 L.Ed. 95 (1945).

> A nonresident defendant must have 'minimum contacts'
> with the forum state such that a court may view that
> defendant as having 'purposefully availed' itself of the
> protection and benefits of the laws of the forum state.
> ***Burger King Corp. v. Rudzewicz***, 471 U.S. 462, 473-76,
> 105 S.Ct. 2174, 2182-84, 85 L.Ed.2d 528 (1985).  Once
> minimum contacts have been established, the court must
> ensure that the exercise of jurisdiction 'does not offend
> 'traditional notions of fair play and substantial justice.'
> ***World-Wide Volkswagen Corp. v. Woodson***, 444 U.S.

14

> 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1979)
> (quoting *International Shoe*, 326 U.S. at 316, 66 S.Ct. at
> 158).

*Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Co-op*., 17 F.3d 1302, 1305

(1994).  The issue turns on whether the exercise of personal jurisdiction is

"reasonable" under the circumstances of a given case.  *TH Agric. & Nutr.*, 488

F.3d at 1287 (citation omitted).  "'[T]he reasonableness prong of the due process

inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum

contacts, the less the defendant need show in terms of unreasonableness to defeat

jurisdiction.'"  *Id.* (citation omitted).

## C.      General vs. Specific Jurisdiction.

A nonresident defendant's "minimum contacts" can be established in two

ways, either by general jurisdiction or by specific jurisdiction.  *Trierweiler v.*

*Croxton & Trench Holding Corp*., 90 F.3d 1523, 1532-33 (10th Cir.1996).

"General jurisdiction lies when the defendant's contacts with the forum state are so

'continuous and systematic' that the state may exercise personal jurisdiction over

the defendant, even if the suit is unrelated to the defendant's contact with the state."

*Id*., at 1533 (citation omitted).  Specific jurisdiction "exists when the defendant

purposely avails itself of the privilege of conducting activities within the forum

state, thus invoking the benefits and protections of its laws."  *Id*., at 1532 (citation

omitted).  Specific jurisdiction extends only where the claims made in the lawsuit are directly related to the defendant's contacts with the state.

Plaintiff has conceded that the Court does not have general jurisdiction over Defendant.  (Doc. 29, at 8.)  There is no showing that Defendant's actions within Kansas were "continuous and systematic."  ***Trierweiler***, 90 F.3d at 1533.  Further, there is no evidence that Defendant maintained an office or place of business in Kansas, is registered to do business in Kansas, solicits customers in the state, or has bank accounts or property here.  ***Melea, Ltd. v. Jawer SA***, 511 F.3d 1060, 1066 (10th Cir. 2007).  Thus, the Court's analysis will focus on whether Defendant purposely availed himself of the privilege of conducting activities within the State of Kansas such that specific jurisdiction is established.

## III.  <u>DISCUSSION</u>

The Court conducted a scheduling conference in this case and gave the parties the opportunity to conduct early discovery concerning the jurisdictional issue.  (Doc. 8, at 2.)   The motion to dismiss on jurisdictional grounds was not filed until the time for this early discovery had elapsed.  Defendant conducted written discovery and relied on some of that written discovery in supporting its motion to dismiss.  (Doc. 26-3, at 2-45.)  Plaintiff apparently conducted no written discovery at all.  Neither party took depositions of any witnesses.  No one

16

requested an evidentiary hearing on the motion to dismiss, and the motion was submitted for decision based solely on the allegations of the petition along with affidavits and sworn written discovery materials.

Defendant contends that, throughout the course of this litigation, Plaintiff's factual allegations "have ebbed and flowed in attempt to avoid dismissal." (Doc. 26, at 9.) For instance, in the earlier dismissed state court action, Apa Dana alleged that Hamid did not send a representative to Wichita, but rather personally came to Kansas and purchased the rugs at issue. (Doc. 26-2, at 22, ¶ 3.) According to Hamid, Apa Dana and Bahman's credibility "must be questioned" because their "factual contentions have changed so dramatically" over the course of this litigation. (Doc. 26, at 11.) The Court acknowledges these factual inconsistencies, some of which have been highlighted by the Court in its summary of facts in this case.[10]

Because this motion was presented for decision based on the allegations of the petition, affidavits and sworn, written discovery materials, the Court is required to accept all well-pleaded facts not controverted by affidavits in the light most favorable to Plaintiff, and to resolve any factual disputes raised by affidavits or

---

[10] The most bothersome inconsistency relates to the question of whether Mohamad came to Wichita as the agent of Hamid or as an agent of the Rug Center. This is a critical element in considering whether the Court has personal jurisdiction over Hamid.

sworn materials in favor of plaintiff.  ***Jefferson County Sch. Dist.***, 175 F.3d at

855; ***Dudnikov,*** 514 F.3d at 1070;  ***Melea, Ltd.,*** 511 F.3d at 1065.  Thus, if there is

a factual dispute between affidavits and/or sworn discovery responses by Apa

Dana when compared to the affidavit of Hamid, the Court must construe those

factual disputes in favor of Apa Dana for purposes of this motion only.  However,

this rule does not prevent the Court from considering all of Apa Dana's sworn

statements together and determining which of Apa Dana's versions is the most

plausible, non-conclusory, and non-speculative.  *See e.g.,*  ***Bell Atl. Corp. v.***

***Twombly***, __U.S. __, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007).

After applying the above standards to the evidence presented by the parties,

the Court finds that the following material facts govern <u>for purposes of ruling on</u>

<u>the present motion</u>.

Mohamad came to Wichita, Kansas in November 2000 on behalf of the Rug

Center to see about purchasing rugs from Apa Dana for re-sale at the Rug Center's

place of business in California.  Mohamad dealt with Bahman who was

Mohamad's nephew.  Bahman, acting on behalf of Apa Dana, knew that Hamid

was the president and a major stockholder of the Rug Center.  Hamid, however,

was not actively involved in the operation or business of the Rug Center.  Because

Apa Dana had not been involved in prior business transactions with the Rug

Center, Bahman initiated a telephone call to Hamid in California.  During that phone call, Hamid agreed orally to guarantee payment of rugs purchased by Mohamad on behalf of the Rug Center.  Mohamed then completed the purchase and the rugs were shipped from Kansas to the Rug Center in California. Thereafter, the Rug Center, sent approximately four payments to Apa Dana in Kansas before the payments ceased.  Bahman later went to California in October 2003, and met with Hamid and others.  During that meeting Hamid again indicated that he would pay for the rugs by May 2004.  Then, in July 2004, Hamid sold all of his stock in the Rug Center to Mohamad and Hamid was no longer a shareholder of the Rug Center.  During the entire time of these transactions, Hamid never physically came to Kansas, never picked up any rugs in Kansas, never initiated any contact with Kansas from his home in California, and never sent any personal payments to Kansas for the rugs.  Finally, while the "statement" attached to the petition filed in state court is addressed to Hamid as president of the Rug Center, almost all of the individual invoices which support the sales of rugs indicate that they were sold to the Rug Center and not to Hamid personally.  Based on these governing facts, the Court must then decide whether Apa Dana has met its burden of making a *prima facie* showing of personal jurisdiction over Hamid individually.

The United States Supreme Court has held, and the Tenth Circuit has

recently reiterated, that "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities." *Burger King*, 471 U.S. at 473, 105 S.Ct. 2174; *see also TH Agric. & Nutr.*, 488 F.3d at 1287-88 (quoting *Burger King*) (distinguishing cases in which the non-resident did not solicit business in the forum state).

Hamid argues that he did not transact any business in Kansas.  (*See* Doc. 26, at 12-18.)  More specifically, he contends he "was never within the state, never entered the sate, or caused any personal agent of his to enter the State of Kansas in connection with the purchase of any rugs from plaintiff."  (Doc. 32, at 8.)  Hamid continues that "[t]here is simply no evidence that defendant 'purposely' performed any act in Kansas or directed any activity towards Kansas.  Defendant didn't personally solicit the plaintiff in Kansas."  (Doc. 32, at 10.)  He contends that the "**only** alleged contact" linking him to the underlying transaction is that Plaintiff unilaterally sought his "personal guaranty of a corporate debt in the form of a telephone call placed to defendant who was residing in California."  (*Id*.) (Emphasis in original.)

Hamid cites the *Hudye Soil Services, Inc.* decision for the proposition that "as a general rule, letters and telephone calls are insufficient to establish personal

20

jurisdiction."  46 F.Supp.2d at 1162.  Hamid also cites the **Thompson** decision as support for his statement that "[a] contract is not sufficient by itself to establish personal jurisdiction under the transaction of business provision of the long arm statue [sic]."  (Doc. 32, at 10 (citing **Thompson**, 804 F.Supp. at 196 (internal citation omitted).)

The Court agrees with the legal conclusion that a "plaintiff's unilateral activities in the forum state . . . cannot be used to bootstrap a nonresident defendant into the forum state on the basis that he transacted business there."  **Thompson v. Chambers**, 804 F.Supp. 188, 196 (D.Kan. 1992).  Based upon the above governing facts, the case involves a single telephone call initiated by Bahman in Kansas directed to Hamid in California.  Hamid did not send his <u>personal</u> representative or agent to Kansas to inspect or initiate negotiations to purchase rugs <u>on behalf of Hamid</u>.  Therefore, Hamid, individually, did not engage in a transaction where a person does enumerated acts in Kansas, "in person <u>or through an agent or instrumentality</u>."  K.S.A. 60-308(b) (emphasis added).  Nor did Hamid personally send payments on his individual account to Kansas in payment for the rugs.  From the governing facts, the Court cannot find that Hamid has purposefully directed his activities toward Kansas.  **Burger King Corp**., 471 U.S. at 472-73; **Hanson v. Denckla**, 357 U.S. 235, 252-53 (1958).

Under the above-stated facts, Hamid's "conduct and connection with the
forum State are not such that he should reasonably anticipate being haled into
court" in Kansas regarding a dispute resulting from the oral agreement at issue.
***World-Wide Volkswagen Corp.***, 444 U.S. at 287, syl. (b), 100 S.Ct. at 562.
Therefore, this Court's exercise of personal jurisdiction over Hamid individually
would "offend 'traditional notions of fair play and substantial justice.'"
***International Shoe***, 326 U.S. at 316, 66 S.Ct. at 158 (internal quotation omitted).[11]

After applying the proper standard and considering the governing facts, the
Court concludes that Apa Dana has failed to make a *prima facie* showing of
personal jurisdiction over Hamid.  Apa Dana has clearly established a *prima facie*
case of personal jurisdiction over the entity of Persian & Oriental Rug Center, Ltd.
However, that entity is neither the named defendant in this case nor is it the

---

[11]   Having concluded that Hamid's conduct and connection with the forum State
are not such that he should reasonably anticipate being haled into court in Kansas, the
Court does not need to reach the second prong of the specific jurisdiction issue as to
whether Apa Dana's claim for relief arises out of Hamid's oral promise to pay for rugs
purchased by the Rug Center.  ***Melea***, 511 F.3d at 1068 (citing ***Burger King***, 471 U.S. at
472-73).  However, it does appear that the claim in the present action does arise out of the
promise by Hamid to pay for the Rug Center rugs.  The Court notes, however, that a large
portion of the claim in this case does not relate to rugs sold to the Rug Center, but rugs
sold to Nima Rug Gallery and Santa Barbara Gallery and/or Santa Barbara Rug.  It is not
clear from Apa Dana's Supplemental Answer to Interrogatory No. 5 (Doc. 26-3, at 42-43)
that Hamid ever orally guaranteed payment of rugs sold to those entities.  Therefore, as to
any claims related to Nima and Santa Barbara, it would appear that those claims do not
arise out of the same oral promise that relates to the Rug Center.

22

moving party seeking dismissal on jurisdictional grounds.  Obviously the reason is that the corporate entity is now defunct.  *See supra* note 4.  Unfortunately, that fact alone does not establish personal jurisdiction over Hamid individually.  *See*
***Executive Aircraft Consulting, Inc. v. Towers Fin. Corp***., Case No. 91-1357-B, 1992 WL 402032, at \*2 (D.Kan. 1992) (holding that "[a]n individual's actions, taken in his capacity as a corporate officer, do not create personal jurisdiction over that individual even though the state may have personal jurisdiction over the corporations" he was representing) (citations omitted).

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Doc. 25) is **GRANTED**.

Dated at Wichita, Kansas, on this 27th day of March, 2008.


   s/   DONALD W. BOSTWICK   
DONALD W. BOSTWICK
United States Magistrate Judge

23